CASE NO. 14-30067

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

————————

ELZIE BALL; NATHANIEL CODE; JAMES MAGEE,

*Plaintiffs-Appellees,*

v.

JAMES M. LEBLANC, SECRETARY, DEPARTMENT OF
PUBLIC SAFETY AND CORRECTIONS; BURL CAIN, WARDEN,
LOUISIANA STATE PENITENTIARY; ANGELIA NORWOOD,
WARDEN OF DEATH ROW; LOUISIANA DEPARTMENT OF
PUBLIC SAFETY AND CORRECTIONS,

*Defendants-Appellants.*

————————

Appeal from The United States District Court,
Middle District of Louisiana, Case No. 3:13-cv-00368
Hon. Brian A. Jackson

————————

**APPELLEES' REPLY BRIEF**

————————

Mercedes Montagnes, LA Bar
No. 33287 (Lead Counsel)
Elizabeth Compa, LA Bar No. 35004
The Promise of Justice Initiative
636 Baronne Street
New Orleans, LA  70113
Telephone:  (504) 529-5955
Facsimile:  (504) 558-0378
mmontagnes@thejusticecenter.org
bethc@thejusticecenter.org


Steven Scheckman, LA Bar No. 08472
Schiff, Scheckman & White LLP
829 Baronne Street
New Orleans, LA  70113
Telephone:  (504) 581-9322
Facsimile:  (504) 581-7651
steve@sswethicslaw.com

Mitchell A. Kamin, CA Bar No. 202788
Jessica Kornberg, CA Bar No. 264490
Nilay U. Vora, CA Bar No. 268339
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California  90067-2561
Telephone:  (310) 201-2100
Facsimile:  (310) 201-2110
mak@birdmarella.com
jck@birdmarella.com
nuv@birdmarella.com

*Attorneys for Plaintiffs-Appellees*

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fifth Circuit Rule 28.2.1, the undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal:

1.   *PLAINTIFFS-APPELLEES*: ELZIE BALL, NATHANIEL CODE, AND JAMES MAGEE;

2.   *ATTORNEYS FOR PLAINTIFFS-APPELLEES*: MERCEDES MONTAGNES, ELIZABETH COMPA, AND THE PROMISE OF JUSTICE INITIATIVE;

3.   *ATTORNEYS FOR PLAINTIFFS-APPELLEES*: MITCHELL A. KAMIN, JESSICA C. KORNBERG, NILAY U. VORA, AND THE LAW FIRM OF BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.;

4.   *ATTORNEYS FOR PLAINTIFFS-APPELLEES*: STEVEN SCHECKMAN AND THE LAW FIRM OF SCHIFF, SCHECKMAN & WHITE, LLP;

5.   *ATTORNEYS FOR THE* PLAINTIFF-*APPELLEES:* WALTER DELLINGER, JONATHAN HACKER, AND THE LAW FIRM OF O'MELVENY AND MYERS, LLP.

6.   *DEFENDANTS*-APPELLANTS: JAMES M. LEBLANC, SECRETARY OF THE LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS; BURL CAIN, WARDEN OF THE LOUISIANA STATE PENITENTIARY; ANGELA NORWOOD, WARDEN OF DEATH ROW; AND THE LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS;

7.   *ATTORNEYS FOR DEFENDANTS-APPELLANTS*: E. WADE SHOWS, JAMES L. HILBURN, AMY L. MCINNIS, GRANT J. GUILLOT, AND THE LAW FIRM OF SHOWS, CALI & WALSH, LLP;

8.   *ATTORNEYS FOR DEFENDANTS-APPELLANTS*: THOMAS E. BALHOFF, JUDITH R. ATKINSON, CARLTON JONES III, AND THE LAW FIRM OF ROEDEL, PARSONS, KOCH, BLACHE, BALHOFF & MCCOLLISTER.

9.   *ATTORNEYS FOR DEFENDANTS-APPELLANTS:* S. BROOKE BARNETT BERNAL, LATOYA D. JORDAN, MICHAEL A. PATTERSON, AND THE LONG LAW FIRM, LLP; AND

10.  *ATTORNEYS FOR DEFENDANTS-APPELLANTS:*  JOHN LANE EWING, JR., AND THE
     LAW FIRM OF CAZAVOUX EWING, LLC.

Respectfully Submitted:

  */s/ Mercedes Montagnes*
Mercedes Montagnes, LA Bar No. 33287
(Lead Counsel)
Elizabeth Compa, LA Bar No. 35004
The Promise of Justice Initiative
636 Baronne Street
New Orleans, LA  70113
Telephone:  (504) 529-5955
Facsimile:  (504) 558-0378
mmontagnes@thejusticecenter.org
bethc@thejusticecenter.org

Nilay U. Vora, CA Bar No. 268339
Mitchell A. Kamin, CA Bar No. 202788
Jessica Kornberg, CA Bar No. 264490
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California  90067-2561
Telephone:  (310) 201-2100
Facsimile:  (310) 201-2110
mak@birdmarella.com
jck@birdmarella.com
nuv@birdmarella.com

Steven Scheckman, LA Bar No. 08472
Schiff, Scheckman & White LLP
829 Baronne Street
New Orleans, LA  70113
Telephone:  (504) 581-9322
Facsimile:  (504) 581-7651
steve@sswethicslaw.com

*Attorneys for Plaintiffs-Appellees*

# **TABLE OF CONTENTS**

**Page**

I.  SUMMARY OF THE CASE ........................................................................1

II. ARGUMENT.............................................................................................3

A.  The District Court Erred in Finding that Plaintiffs Are Not
    Disabled. ..........................................................................................3

1.  The district court only considered the pre-ADAAA
    definitions of disability. .............................................................4

a.  The post-ADAAA statutory and regulatory
    language supports a finding that Plaintiffs are
    disabled. ..........................................................................4

b.  The case law relied on by Defendants does not
    support a finding that Plaintiffs are not disabled..............9

2.  Plaintiffs are disabled................................................................12

B.  The District Court's Error Was Prejudicial; Plaintiffs Meet the
    Remaining Elements for Their Claims Under the ADA and RA........12

1.  The DOC is subject to Title II of the ADA and Section
    504 of the RA. ..........................................................................13

2.  The DOC discriminated against Plaintiffs and violated its
    obligations under the ADA and RA. ..........................................13

a.  The DOC refused to provide Plaintiffs with
    a reasonable modification despite Plaintiffs'
    requests. ..........................................................................16

b.  The DOC discriminated by applying neutral
    policies that had a disparate impact on Plaintiffs as
    a result of Plaintiffs' disabilities.....................................17

III. CONCLUSION.........................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bennett-Nelson v. Louisiana Bd. of Regents*,
  431 F.3d 448 (5th Cir. 2005) ..............................................................13

*EEOC v. Agro Distribution LLC*,
  555 F.3d 462 (5th Cir. 2009) ................................................................7

*Estelle v. Gamble*,
  429 U.S. 97. 104 (1976).................................................................14, 15

*Farmer v. Brennan*,
  511 U.S. 825 (1994)............................................................................15

*Hale v. King*,
  642 F.3d 492 (5th Cir. 2011) ............................................................9, 10

*Hudson v. McMillian*,
  503 U.S. 1 (1992)..........................................................................14, 15

*Lanier v. Univ. of Texas Sw. Med. Ctr.*,
  527 F. App'x 312 (5th Cir. 2013) (unpublished)..................................17

*Mann v. La. High Sch. Ath. Ass'n*,
  535 Fed. Appx. 405 (5th Cir. 2013)....................................................10

*Milton v. Texas Dept. of Criminal Justice*,
  707 F.3d 570 (5th Cir. 2013) .............................................................11

*Neely v. PSEG Texas, Ltd. Partnership*,
  735 F.3d 242 (5th Cir. 2013) ........................................................11, 12

*Pace v. Bogalusa City School Bd.*,
  403 F.3d 272 (5th Cir. 2005) .............................................................13

*Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*,
  534 U.S. 184 (2002)....................................................................10, 11

**Statutes**

Americans with Disabilities Act,
   42 U.S.C. § 12101, *et seq.* ...........................................................*passim*

Americans with Disabilities Act Amendments Act,
   Pub. L. No. 110, 122 Stat. 3553 (2008).......................................*passim*

Rehabilitation Act,
   29 U.S.C. § 701, *et seq.* ...............................................................12, 13

**Other Authorities**

29 C.F.R. § 1630.2 ........................................................................*passim*

79 Fed. Reg. 4839 (Jan. 30, 2014) ............................................................5

76 Fed. Reg. 16978 (Mar. 25, 2011)..........................................................5

## I.     SUMMARY OF THE CASE

The Defendants/Appellants' ("Defendants") brief is riddled with inaccuracies and misunderstandings of the law.  In fact, the opening line of Defendants' Summary of Argument misquotes Plaintiffs/Cross-Appellants' ("Plaintiffs") brief by changing the word "remedied" to "denied," fundamentally altering the meaning of that sentence.  Reply Brief and Cross-Appellee Brief of Appellants/Cross-Appellees ("Def. Resp. Br.") at 1 and 6.  This error renders their summary of the case and subsequent argument unintelligible.

Perhaps more disturbingly, Defendants confuse factual disagreements with clear error.  For instance, in arguing that Defendants have not discriminated against Plaintiffs under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*, Defendants state that "Plaintiffs at trial offered no medical evidence to demonstrate that they are subjected to a substantial risk of developing a heat-related illness" and that "[t]his lack of medical evidence was even acknowledged by Dr. Susi Vassallo."  Def. Resp. Br. at 27-28.  In reality, there was voluminous evidence that Plaintiffs face a substantial risk of serious harm in the form of heat-related illness.  *See, e.g.*, ROA.4999-ROA.5019; ROA.5993-ROA.6063; Appellee's Principal and Response Brief ("Pl. Br.") at 18-30.  Further, the statement Defendants draw from Dr. Vassallo's testimony to support their argument is taken out of context and does not represent the substance of her

opinion. The district court, in evaluating all of the evidence, found that Plaintiffs demonstrated that the heat on Death Row presents a substantial risk of serious harm. This finding is reviewed for clear error – not cherry-picked statements purported to support Defendants' argument.

Defendants also fail to provide this Court with an explanation of their earlier misstatements about the recoded temperature and heat index on Death Row. *See* Pl. Br. at 7 n.38. Though Defendants acknowledged their error in a letter to this Court (Letter from Grant J. Guillot to Lyle W. Cayce, Clerk of Court (Oct. 15, 2014), Case No. 14-30067, Doc. No. 00512804519), they failed to address how the correct temperatures and heat indices impact their argument in their subsequent briefing. Specifically, Defendants failed to show how the accurate readings impact the contention that the conditions on Death Row do not pose a substantial risk of serious harm. The temperatures and heat indices are integral to an analysis of whether the heat poses a substantial risk of serious harm, which is fundamental to deciding whether Plaintiffs have faced discrimination.

Substantively, Defendants failed to show that thermoregulation is not a major life activity under the post-ADAAA definition of disability. They further failed to show that Plaintiffs did not present sufficient evidence of impairments of various major life activities, including thermoregulatory, circulatory, endocrine, and eyesight limitations.

Further, in arguing that Defendants did not discriminate against Plaintiffs, Defendants fail to refute the arguments advanced by Plaintiffs and thus fail to argue that the error committed by the district court was harmless.

## II.    ARGUMENT

### A.    The District Court Erred in Finding that Plaintiffs Are Not Disabled.

Defendants correctly assert that the issue of whether Plaintiffs are disabled is a question of law that is reviewed *de novo*, since it requires applying the facts of the record to the legal definition of disability.  Def. Resp. Br. at 20.

Defendants suggest that because the district court cited to the Americans with Disabilities Act Amendments Act (ADAAA) in its opinion, it must have properly considered the revised definition of disability.[1]  This contention is without merit and unsupported by the evidence on the record.  To establish disability, an individual must show that he has "a physical or mental impairment that substantially limits one or more major life activities . . . ."  42 U.S.C. § 12102(1)(A).  In its analysis of the disability claims, the district court failed to consider the operation of major bodily functions as a part of the broader category of major life activities.

---

[1]    The ADAAA, enacted in 2008, revised the definition of disability under the ADA.  Pub. L. No. 110–325, 122 Stat. 3553 (2008).

**1.    The district court only considered the pre-ADAAA definitions of disability.**

**a.    The post-ADAAA statutory and regulatory language supports a finding that Plaintiffs are disabled.**

The district court applied the pre-ADAAA definition of disability to this case and failed to consider major bodily functions as part of the major life activity analysis.  As explained in Plaintiffs' opening cross-appeal brief (Pl. Br. at 52-55), the ADAAA expanded the definition of disability in two ways integral to this appeal.  First, it made it easier for individuals to show that they are disabled by requiring that "the definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter."  42 U.S.C. § 12102(4)(A).

Second, under the ADAAA and relevant regulations, the definition of major life activities was expanded to include the operation of major bodily functions:

> For purposes of paragraph (1), a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

42 U.S.C. § 12102.  Additionally, the Equal Employment Opportunity Commission (EEOC) promulgated new regulations in compliance with this change, stating that major life activities included:

> (ii) The operation of a major bodily function, including functions of the immune system, special sense organs and

4

> skin; normal cell growth; and digestive, genitourinary,
> bowel, bladder, neurological, brain, respiratory,
> circulatory, cardiovascular, endocrine, hemic, lymphatic,
> musculoskeletal, and reproductive functions. The
> operation of a major bodily function includes the
> operation of an individual organ within a body system.

29 C.F.R. § 1630.2(i)(1)(ii).[2]

The district court did not take major bodily functions into account when

determining whether Plaintiffs offered sufficient evidence of a disability. Despite

arguing that the court did consider the post-ADAAA changes, Defendants cannot

offer any cites or other evidence to show that the district court considered major

bodily functions in its analysis.

The district court instead drew its definition of major life activities from

a pre-ADAAA articulation. In evaluating Plaintiffs' claims regarding disability,

the court noted that there was no evidence that Plaintiffs' disabilities "substantially

limit their ability to care for themselves, perform manual tasks, walk, see, hear,

speak, breath, learn, working, eat, sleep, stand, lift, bend, read, concentrate, think,

---

[2]    The DOJ issued a Notice of Proposed Rulemaking to conform its Title II & III
regulations to the ADAAA. It states that, "consistent with Executive Order
13563's instruction to agencies to coordinate rules across agencies and harmonize
regulatory requirements where appropriate, the Department is proposing, wherever
possible, to adopt regulatory language that is identical to the revisions to the Equal
Employment Opportunity Commission's (EEOC) Title I regulations implementing
the ADA Amendments Act. See 76 FR 16978 (Mar. 25, 2011). This will promote
consistency in the application of the ADA and prevent confusion among entities
subject to both Titles I and II, as well as those subject to both Titles I and III." 79
Fed. Reg. 4839, 4840 (Jan. 30, 2014).

or communicate."[3] ROA.5048-ROA.5049. This list is nearly identical to a list of

"major life activities" drawn from the EEOC regulation. 29 C.F.R.

§ 1630.2(i)(1)(i) (2012). Notably, however, the district court did not consider any

of the provisions in the regulation's next subsection related to the operation of

major bodily functions, which have been added post-ADAAA. 29 C.F.R.

§ 1630.2(i)(1)(ii) (2012).

Without applying the proper analysis, the district court goes on to

acknowledge that Plaintiffs introduced evidence of impairment of Plaintiffs'

thermoregulation ability:

> [T]he evidence introduced by Plaintiffs was limited to
> how the *heat conditions* in the death row tiers limit
> Plaintiffs' major life activities, and how Plaintiffs'
> underlying medical conditions put them at increased risk
> of developing heat-related illnesses.

ROA.5049 (emphasis in original). It is evident based on this passage of the

opinion that the district court failed to consider thermoregulation as a major life

activity.

Whether thermoregulation constitutes a major life activity under the federal

disability statutes is a purely legal question that is reviewed *de novo* by this Court.

As previously acknowledged by Plaintiffs, the question of whether

thermoregulation is a major bodily function is an issue of first impression for this

---

[3] Plaintiffs argue that Plaintiff Ball did present evidence of an inability to see as
a result of his diabetes. *See* Pl. Br. at 63-65.

Court, despite some discussion of it in *EEOC v. Agro Distribution LLC*, 555 F.3d 462, 469 n.8 (5th Cir. 2009).  Pl. Br. at 56 n.107.

Had the district court considered thermoregulation as a major life activity, Plaintiffs would have prevailed on their disability claims in the district court.  The record demonstrates that thermoregulation is critical to staying alive, as well as to performing the tasks of daily life, and that it is a major bodily function comparable to those enumerated in the ADAAA.  Pl. Br. at 56-63, 65.[4]  Having met the

---

[4]  *See also*, *e.g.*, ROA.5993 ("[Thermoregulation is] the capacity of the body to maintain the temperature of 98.6 within half a degree or so."); **ROA.5996-ROA.5997 ("The ability to maintain temperature is dependent on the cardiovascular system; that is, the heart has to be able to pump very hard to meet the demands of heat.  The blood vessels have to be able to enlarge and constrict.");** ROA.5998 ("[Beta-blocker medication] impairs the ability of the body to cool, because the blood vessels are not able to dilate properly when they're on a beta blocker. . . .  [A] calcium channel blocker . . . works similarly.  Both of those medications have not only effects on the blood vessels, but they have effects on the heart.  They decrease the heart's ability to pump as hard and to meet the requirements of heat . . . ."); ROA.6000 ("[Processes of acclimatization such as sweating faster and at lower temperatures], first of all, occur in young, healthy people, and they occur in people who are not on these medications, but they all require a very healthy squeeze of the heart and a very healthy compliant vascular system where the veins can widen like they're supposed to.  So, it requires good health and all the cardiovascular system to be intact to be able to acclimatize."); **ROA.6001 ("Diuretics are important in decreasing the ability to thermoregulate.  First of all, they decrease the total amount of water, essentially. . . .  They cause the loss of water.  The loss of salt as well.  And – and the heart requires something to contract.  We need a lot of fluid to contract around.  So when someone is on a diuretic they cannot do that.  And it's a – one of the most recognized drugs that lessens the ability of the body to thermoregulate and to cool . . . .");** ROA.6005 ("One of the major pieces of thermoregulation occurs in the brain.  The brain hypothalamus is the – the thermoregulatory sensor.  It's the thermostat, let's call it."); **ROA.6013**

threshold for disability under the statutes, Plaintiffs satisfied the requirements

necessary to prove their claims.  Pl. Br. at 65-72.  Accordingly, the district court

erred in failing to consider thermoregulation in its analysis and in determining that

Plaintiffs failed to provide evidence that they are disabled.

Should this Court decline to address whether thermoregulation is a major life

activity, Plaintiffs produced evidence that all three Plaintiffs are impaired in their

circulatory systems and that Plaintiff Ball's endocrine system is impaired, two

bodily functions explicitly discussed in the EEOC regulations.  29 C.F.R.

§ 1630.2(i)(1)(ii).  Pl. Br. at 63-65.

---

**("[Heatstroke is] a very precipitous loss of control of the thermostat.")**;
ROA.6014 ("[T]here is an extensive medical literature that talks about medical
conditions that the Plaintiffs have, and the ways in which they are worsened in hot
conditions. . . .  And so we know from numerous of the highest quality medical
literature that individuals with the medical types of problems that these individuals
have are at greater risk for heat stroke . . . ."); ROA.6018 ("[H]ypertension's
effects on the body over time are to interfere with the ability of the heart to – and
the ability to thermoregulate by vasoconstriction.  There's arterial sclerotic disease
associated with hypertension.  All the things that put you at risk."); **ROA.6020
("[W]hen it's very hot, our veins dilate and there's a competition between
being able to maintain an upright blood pressure, an upright stature, to stand
and maintaining blood pressure.  Eventually the need to maintain blood
pressure and vasoconstrict wins, because that is how the human being stays
conscious.** So, in very hot weather, my blood pressure will fall.  But the need to
maintain some sort of ability to hold the upright position.  If I lie down flat, I can
maintain even a lower blood pressure.  And – but I have to lie down flat.  So, this
is – **this competition in the body's desire to keep an upright position versus the
need to vasodilate, to – and to lower the blood pressure is a competition that
blood pressure wins because it's survival.**") (emphasis added).

**b.    The case law relied on by Defendants does not support a finding that Plaintiffs are not disabled.**

Throughout their response, Defendants suggest that Plaintiffs wish to eliminate the requirement of showing that they are disabled. This is incorrect. Plaintiffs merely aim to show that, contrary to the suggestion by the district court that "the record is void of any *evidence*" of a disability (ROA.5048) (emphasis in original), Plaintiffs introduced significant evidence of disabilities. *See* Pl. Br. at 56-65.

Defendants also incorrectly rely on case law to contend that this Court has already foreclosed the arguments Plaintiffs advance. First, Defendants rely on *Hale v. King*, 642 F.3d 492 (5th Cir. 2011), for its post-ADAAA interpretation of major life activity. However, the Court notes in *Hale* that "[b]ecause Hale's allegations involved conduct occurring prior to the effective date of the ADAAA, we must determine whether Hale was disabled under the ADA prior to its amendment." *Id* at 499. Thus, any language used in *Hale* to define disability does not apply in the instant matter.[5]

---

[5]    Plaintiffs cited *Hale* in their opening brief to support the practice of utilizing EEOC regulations to interpret the ADA outside of the employment context. Plaintiffs acknowledge that they incorrectly identified this case as analyzing the definition of disability after the ADAAA when, as noted above, the ADAAA did not apply. While this error does not impact the substance of Plaintiffs' citation, it is regrettable.

Next, Defendants' reliance on *Mann v. La. High Sch. Ath. Ass'n*, 535 Fed. Appx. 405 (5th Cir. 2013), to define disability under the ADAAA is misplaced. As the *Mann* Court makes clear, "Mann's appellate briefing makes no argument that A.M.'s disorder qualifies as a disability within the framework of the ADA." *Id.* at 410. Instead, the Plaintiff in *Mann* argued that a different legal standard under a separate federal statute applied. *Id.* The Plaintiff in *Mann* only produced the report of one doctor with conclusory statements that the Plaintiff was disabled under a separate legal standard reserved for students. *Id.* Here, in contrast, Plaintiffs marshaled significant evidence of the various ways in which their bodily and life functions are upset by their disabilities and apply the appropriate legal standard.

Defendants also claim that the ADAAA did not change *Toyota Motor*'s definition of major life activities, which was limited to those things that are of central importance to daily life. Def. Resp. Br. at 23-24 (citing *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002)). However, in support, Defendants rely solely on a non-precedential case (*Mann*) that itself cited pre-ADAAA authority (*Hale*).

Defendants' position that *Toyota* still controls is contrary to the plain language of the statute. Pub. L. 110–325, 122 Stat 3553 (Sept. 25, 2008), § 2(b)(4) ("The purposes of this Act are . . . to reject the standards enunciated by the

Supreme Court *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S.

184 (2002), that (1) the terms 'substantially' and 'major' in the definition of

disability under the ADA 'need to be interpreted strictly to create a demanding

standard for qualifying as disabled,' and (2) that to be substantially limited in

performing a major life activity under the ADA 'an individual must have an

impairment that prevents or severely restricts the individual from doing activities

that are of central importance to most people's daily lives' . . . .") (numbering

added). This Court recognized as much in *Neely v. PSEG Texas, Ltd. Partnership*,

735 F.3d 242, 245 (5th Cir. 2013), observing that "the ADAAA primarily focuses

on broadening the definition of 'disability' by singling out and superseding . . .

*Toyota Motor* . . . ." *See also Milton v. Texas Dept. of Criminal Justice*, 707 F.3d

570, 573 n.2 (5th Cir. 2013) (stating that *Toyota Motor* "was overruled by the

ADA Amendments Act of 2008").

Finally, Defendants' comparison between this case and *Neely* is

inapplicable. In *Neely*, the Plaintiff argued that the ADAAA removed the

requirement that the Plaintiff show he suffers from a disability as a predicate for

relief on an ADA claim. 735 F.3d at 244. Here, Plaintiffs agree that they are

required to prove they are disabled. The evidence Plaintiffs advanced proved they

suffered from a disability. Nevertheless, it is clear that the district court relied on

an improper definitions of "disability" and "major life activity." *Neely* is not analogous.

In applying the wrong definition of "major life activity" and therefore "disability," the district court incorrectly found that the Plaintiffs failed to present evidence of a disability.

### 2. Plaintiffs are disabled.

As discussed extensively in the opening brief, Plaintiffs marshaled significant evidence that they suffered from disabilities. See Pl. Br. § VII.A.3, at 56-65.

### B. The District Court's Error Was Prejudicial; Plaintiffs Meet the Remaining Elements for Their Claims Under the ADA and RA.

Defendants scarcely address Plaintiffs' argument that the district court's error was prejudicial because Plaintiffs meet the remaining elements for their claims under the ADA and RA. *See* Pl. Br. at 65-72, Def. Resp. Br. at 26-28. Defendants instead represent that they "will provide more thorough briefing" to the district court in the event of a remand. This is, in effect, a concession that should this Court find that Plaintiffs introduced evidence that they are disabled, a remand would be appropriate. Def. Resp. Br. at 26. Defendants "briefly note" their

potential future argument. However, they fail to refute the arguments and evidence from Plaintiffs' cross-appeal brief regarding these points.[6]

### 1. The DOC is subject to Title II of the ADA and Section 504 of the RA.

Defendants in their Response brief do not contest the district court's finding, nor Plaintiffs' assertion in their Cross-Appeal brief, that the Louisiana Department of Public Safety and Corrections (DOC) is subject to Title II of the ADA and Section 504 of the RA. Def. Resp. Br. at 27.

### 2. The DOC discriminated against Plaintiffs and violated its obligations under the ADA and RA.

Defendants refused to provide Plaintiffs with reasonable accommodations in the form of safe housing despite their knowledge of Plaintiffs' disabilities. Pl. Br.

---

[6] Throughout the briefing, Plaintiffs have discussed the Rehabilitation Act, 29 U.S.C. § 701, *et seq.* ("RA"), and the ADA together, since for the purposes of this brief, they are interchangeable. This Court has identified a difference in the wording of the ADA's and the RA's causation requirements, where the ADA requires a showing of discrimination on the basis of disability, while the RA requires discrimination **solely** on the basis of disability. *See, e.g., Pace v. Bogalusa City School Bd.*, 403 F.3d 272, 288-89 (5th Cir. 2005). However, where a discrimination claim is based on the failure to provide a reasonable accommodation, this Court has made clear that there is no fundamental difference in the causation analysis, since the failure to accommodate necessarily means that the discrimination stems from the individual's disability. *Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 454-55 (5th Cir. 2005) ("In addition to their respective prohibitions of disability-based discrimination, both the ADA and the Rehabilitation Act impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals. Where a defendant fails to meet this affirmative obligation, the cause of that failure is irrelevant."). Plaintiffs therefore discuss the two statutes together.

at 67-71.  Here, Defendants assert that Plaintiffs offered no medical evidence at trial "to demonstrate that they are subjected to a substantial risk of developing a heat-related illness" and claim that "this lack of medical evidence was . . . acknowledged by Dr. Susi Vassallo," Plaintiffs' medical expert.  Def. Resp. Br. at 27-28.  These assertions fly in the face of the extensive evidence Plaintiffs offered, notably in Dr. Vassallo's testimony, of the substantial risk of serious harm to Plaintiffs in the form of heat-related illnesses including heatstroke.  ROA.4999-ROA.5019; ROA.5993-ROA.6063; *see also supra* note 4.

In furtherance of this argument, in footnote 125 of their brief, Defendants refer to pages 14-16 of the brief, which is their reply section.  Because Defendants incorporate these pages of their reply section into their cross-appeal response by referencing them in this footnote, Plaintiffs in this reply directly address the statements made on those pages.

Defendants attempt to refute Dr. Vassallo's testimony that Plaintiffs' medical conditions and prescribed medications make them more susceptible to heat-related illnesses by citing a Supreme Court case regarding the excessive use of force in prisons where the Court made a brief analogy to medical needs.  Def. Resp. Br. at 14, citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  The *Hudson* opinion, in turn, cites to *Estelle v. Gamble*'s language about "serious medical needs," 429 U.S. 97. 104-06 (1976).  *Id.*  Defendants rely on this language to argue

that Plaintiffs failed to show that Defendants infringed upon any serious medical needs of Plaintiffs.  Def. Resp. Br. at 14-15.

Both *Estelle* and *Hudson*, however, predate the Supreme Court's decision in *Farmer v. Brennan*, where the Court held that a prison official's deliberate indifference to a "substantial risk of serious harm" violates the Eighth Amendment. 511 U.S. 825, 828 (1994).  Here, the district court recognized such deliberate indifference to a substantial risk of serious harm in its merits ruling.  ROA.4999-ROA.5044. Defendants failed to advance any relevant case law, and mischaracterized Dr. Vassallo's unambiguous testimony.  *See* ROA.5009 ("BY MR. KAMIN:  Is it your opinion that the Plaintiffs, Nathaniel Code, Elzie Ball, and James Magee, are at imminent risk of severe physical harm due to the heat conditions on Death Row?  BY DR. VASSALLO:  Yes, it is.")

Additionally, and still within the context of their misstatement of law regarding "serious medical needs," Defendants suggest that Dr. Vassallo's testimony was bereft of evidence regarding Plaintiffs' susceptibility to, and prior symptoms of, heat-related illness.  Def. Resp. Br. at 15.  Not so.  Dr. Vassallo explained at some length, as the district court discussed in its opinion, that there is a substantial risk of serious harm in heat conditions like those in the Death Row tiers, that the symptoms Plaintiffs described are akin to those of individuals entering heat exhaustion, and that Plaintiffs are at imminent risk of severe physical

harm.  ROA.5006-5009.  The district court also noted that Defendants' sick-call

form supports the conclusion that the monetary and potential disciplinary

consequences of filing a sick-call form may have discouraged the use of the forms

by Plaintiffs.  ROA.5011-5012 n.76.  Further, Dr. Vassallo's testimony addressed

the sudden and catastrophic nature of heatstroke and why a lack of heatstroke

symptoms recorded in existing medical records does not at all indicate

a diminished risk of heatstroke under extreme heat conditions.  ROA.5010-5011.

Despite Defendants' present attempts to create ambiguity in Dr. Vassallo's

testimony, the district court noted that at trial Defendants "failed to rebut" her

testimony and it was therefore "largely uncontroverted."  ROA.5011.

### a.    The DOC refused to provide Plaintiffs with a reasonable modification despite Plaintiffs' requests.

Defendants attempt to rebut Plaintiffs' argument that Defendants failed to

provide a reasonable accommodation despite Plaintiffs' requests on the basis, as

discussed *supra*, that Plaintiffs did not offer evidence of a substantial risk of

serious harm.  For the reasons also discussed *supra*, the attempt fails because this

assertion is false.  Given that Defendants do not address the arguments on this

point, Plaintiffs refer to the arguments offered in their cross-appeal brief.  *See* Pl.

Br. at 67-71.

     **b.**    **The DOC discriminated by applying neutral policies that had a disparate impact on Plaintiffs as a result of Plaintiffs' disabilities.**

Defendants argue that the conditions on the Death Row tiers "apply across the board" to all inmates housed there, and therefore are not discriminatory. Def. Resp. Br. at 28. This argument, however, is inconsistent with the definition that Defendants themselves cite, which requires comparison of Plaintiffs' disabilities to most people in general population[7] (who generally do not share Plaintiffs' significant problems in their ability to thermoregulate). *See* Def. Resp. Br. at 21-22 (citing *Lanier v. Univ. of Texas Sw. Med. Ctr.*, 527 F. App'x 312, 318 (5th Cir. 2013) (unpublished)). *Lanier* quotes the EEOC regulations' definition of an impairment as a disability that "substantially limits the ability of an individual to perform a major life activity *as compared to most people in the general population*." *Id.*, citing 29 C.F.R. § 1630.2(j)(1)(ii) (2012). The comparison of Plaintiffs to other men on Death Row is, accordingly, inapplicable to this analysis.

Defendants' assertion that "there is no evidence that Plaintiffs were denied any benefits or participation in any DOC program" (Def. Resp. Br. at 28) fails to address Plaintiffs' argument, and the evidence offered in support of it, on this point in Plaintiffs' cross-appeal. Pl. Br. at 71-72. Plaintiffs reiterate that Defendants

---

[7]   Note the term "the general population" in this regulation does not mean the overall population of inmates at a prison (sometimes referred to as "general population") but rather refers to the broader citizenry. 29 C.F.R. § 1630.2.

discriminated against them by applying facially neutral policies in a way that disproportionately impacted Plaintiffs, for the reasons discussed in the original cross-appeal brief. *Id.*

## III.  CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court remand this matter with respect to the disability claims for further findings.

Respectfully submitted on November 10, 2014.

*/s/ Mercedes Montagnes*

Mercedes Montagnes, LA Bar No. 33287
(Lead Counsel)
Elizabeth Compa, LA Bar No. 35004
The Promise of Justice Initiative
636 Baronne Street
New Orleans, LA  70113
Telephone:  (504) 529-5955
Facsimile:  (504) 558-0378
mmontagnes@thejusticecenter.org
bethc@thejusticecenter.org

Nilay U. Vora, CA Bar No. 268339
Mitchell A. Kamin, CA Bar No. 202788
Jessica Kornberg, CA Bar No. 264490
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California  90067-2561
Telephone:  (310) 201-2100
Facsimile:  (310) 201-2110
mak@birdmarella.com
jck@birdmarella.com
nuv@birdmarella.com

Steven Scheckman, LA Bar No. 08472
Schiff, Scheckman & White LLP
829 Baronne Street
New Orleans, LA  70113
Telephone:  (504) 581-9322
Facsimile:  (504) 581-7651
steve@sswethicslaw.com


*Attorneys for Plaintiffs-Appellees*

### CERTIFICATE OF COMPLIANCE

Pursuant to 5th Cir. Rules 25.2.1 and 25.2.13, I certify that the required privacy redactions have been made; the electronic submission is an exact copy of the paper document.  Pursuant to 5th Cir. R. 32, I certify that this brief complies with the type-volume limitations of Fed. R. App. P. 28.1(e)(2)(C) and Fed. R. App. P. 32(a)(7)(B) because it contains 4,327 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and 5th Cir. R. 32.2.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the and type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 software in Times New Roman 14-point font.

I understand that a material misrepresentation in this certificate of compliance may result in the Court striking the brief and in sanctions against the person signing the brief.

   */s/ Mercedes Montagnes*
Mercedes Montagnes

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on November 10, 2014, a copy of the foregoing has this date been served upon all parties through their respective counsel of record by operation of the Court's electronic filing system and has been filed electronically with the Clerk of the Court using the CM/ECF system.

<u>*/s/ Mercedes Montagnes*</u>
Mercedes Montagnes

E. Wade Shows
James L. Hilburn
Amy L. McInnis
Grant J. Guillot
Shows, Cali and Walsh, LLP
628 St. Louis Street
PO Drawer 4425
Baton Rouge, LA  70821
Telephone:  (225) 346-1461
Facsimile:  (225) 346-1467
Emails:     wade@scwllp.com
            jamesh@scwllp.com
            amym@scwllp.com
            grantg@scwllp.com

Thomas E. Balhoff
Judith R. Atkinson
Carlton Jones, III
Roedel, Parsons, Koch, Blache, Balhoff
& McCollister
Special Assistant Attorneys General
8440 Jefferson Highway, Suite 301
Baton Rouge, LA  70809
Telephone:  (225) 929-7033
Facsimile:  (225) 928-4925
Emails:     tbalhoff@roedelparsons.com
            jatkinson@roedelparsons.com
            cjones@roedelparsons.com

*Attorneys for Defendants-Appellants*